AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
для the

Middle District of Alabama

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Aubrey Goodwin | ) | Case No. 2:18mj274-GMB |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 3, 2018__ in the county of __Montgomery__ in the __Middle__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 United States Code, Section 843(a)(3) | Controlled Substance Act |

This criminal complaint is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Marcus Dees, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/11/2018__

_____
*Judge's signature*

City and state: __Montgomery, Alabama__    Gray M. Borden, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### I. AGENT TRAINING AND EXPERIENCE

Your affiant, Marcus Dees, is a Task Force Officer (TFO) with the Department of Justice, Drug Enforcement Administration (DEA), Birmingham District Office (BDO), Tactical Diversion Squad (TDS), charged with investigating narcotics trafficking and money laundering offenses, specifically crimes related to the diversion of controlled substances. I am employed by the Montgomery, Alabama Police Department and have been since February of 2005. I completed the Alabama Police Officer's Standards and Training certification with the Montgomery Police Department's Training Academy on August 12, 2005. In 2009, the police department assigned me to the narcotics division. I have worked in that division ever since.

During my career, I have worked in patrol and investigative capacities and have conducted investigations into many aspects of criminal law, including illicit drug crimes. I am trained in the identification of scheduled controlled substances and the diversion of scheduled controlled substances.

I was assigned to the DEA/BDO/TDS in February of 2018, and have continued in this assignment since that time, where I have conducted investigations involving the diversion of prescription scheduled controlled substances.

I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offences enumerated in Title 18, United States Code, Section 2516.

I am familiar with, and have employed, all normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant interviews, and undercover operations. In connection with drug trafficking investigations, I have participated in and/or executed numerous search warrants, including at residences of drug traffickers/manufacturers and their co-conspirators/associates, stash houses used as storage and distribution points for controlled substances, and business offices used by drug dealers as "fronts" to conceal their unlawful drug trafficking activities and the proceeds obtained from unlawful drug trafficking. I have participated in investigations involving the following types of drugs: oxycodone, hydrocodone, cocaine, marijuana, methamphetamine, and other controlled substances.

As part of my training and experience, I am aware that certain controlled substances are often abused and illegally diverted from what would otherwise be considered legitimate medical uses. I also know that individuals who abuse these types of drugs are at risk for becoming physically dependent on these drugs.

## II. STATEMENT OF PROBABLE CAUSE

At approximately 3:23 PM on December 3, 2018, a Montgomery, Alabama police officer received a call instructing him to go to the Walgreen's pharmacy store located at 2281 East South Boulevard in Montgomery. The officer went to the pharmacy. When he arrived, he spoke with the store manager, Jorge Escobar.

Escobar informed the officer that, earlier that day, a customer, Aubrey Goodwin, came to store's pharmacy and filled two prescriptions. One of the prescriptions was for alprazolam. The other was for a non-controlled medication. Both prescriptions had been called in by a nurse purportedly operating under the authority of Dr. John Strunk, a Dothan, Alabama physician.

Soon after Goodwin left the store, an unidentified female who held herself out as "Nicole, a nurse for Dr. Strunk's office," called the pharmacy. The woman purported to call in a prescription for Goodwin for promethazine with codeine. While doing so, the woman provided Dr. Strunk's actual DEA registration number.

In light of the quantity of promethazine with codeine the woman was calling in, after hanging up the phone with Nicole, the pharmacist telephoned Dr. Strunk's office. A nurse answered the telephone. That nurse stated none of the prescriptions filled at the Montgomery Walgreen's store for Goodwin were legitimate. The nurse went on to state that the office had received multiple calls from pharmacies located in the Montgomery area and other areas about prescriptions called in by someone named "Nicole."

While the officer was at the store learning this information, the pharmacy telephone rang again. One of the pharmacy technicians answered the telephone. The caller stated that she was Goodwin's girlfriend and that Goodwin was on the way back to the pharmacy to pick up the promethazine with codeine prescription. The caller asked if the prescription was ready. The pharmacy technician consulted with the store manager and the officer regarding this call; the officer instructed the pharmacy technician to advise the caller that the prescription was ready. The pharmacy technician did so.

Thereafter, the officer went outside and moved his vehicle to an inconspicuous location. Inside the vehicle, the officer waited for Goodwin's return. Soon thereafter, Goodwin returned to the pharmacy and pulled his car to the drive-thru pickup window. The officer then pulled his car up behind Goodwin's and signaled for Goodwin to move his vehicle to the adjacent parking lot. Goodwin did so.

3

After Goodwin pulled his car to the other parking lot, the officer approached Goodwin's vehicle, instructed Goodwin to exit the car, and arrested Goodwin on the charge of unlawful possession of a controlled substance, see Ala. Code 13A-12-212. The officer subsequently conducted an inventory search of Goodwin's vehicle. While doing so, they found the alprazolam Goodwin had recently obtained. Alprazolam is a Schedule IV controlled substance.

Later that evening, I conducted a custodial interview of Goodwin at the Montgomery police department's special operations division's office. During the interview, Goodwin admitted to knowing that the prescriptions were forgeries. He claimed that he was picking up the prescriptions for a woman, whose name he couldn't recall. According to Goodwin, this unidentified woman was going to pay Goodwin for obtaining medications by way of fraudulent prescriptions. The woman would telephone Goodwin and instruct him regarding where to go to pick up the prescriptions and where to go to deliver the prescriptions to the woman. Goodwin concluded the interview by stating that he knew what he was doing was wrong and that he would "own up to" what he had done.

### III. CONCLUSION

Based upon the foregoing and upon my training and experience, I submit that there is probable cause to believe that Aubrey Goodwin has violated 21 U.S.C. § 843(a)(3) by obtaining controlled substances through misrepresentation, fraud, forgery, deception, or subterfuge.

I swear under penalty of perjury that the foregoing is true and correct.

Marcus Dees
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
11th day of December, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF ALABAMA